IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| THE ADVANTAGE OF ADVERTISING, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-612-RAH [WO] |
| CITY OF OPELIKA, ALABAMA, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.     INTRODUCTION

The Advantage of Advertising, LLC engages in the business of erecting public-facing signs for commercial and noncommercial purposes.  In this dispute, Advantage applied for permission to erect six signs in Opelika, Alabama.  The City of Opelika rejected all six sign applications.  Advantage brings this suit challenging the application denials, claiming violations of its First Amendment free speech and Fourteenth Amendment equal protection rights, as well as violations of state free speech laws and Alabama Code § 11-52-77 (creating procedures for a municipality to follow before passing a municipal ordinance).  The City has moved to dismiss, asserting lack of standing and alternatively failure to state a claim.  Upon

consideration of the parties' arguments, the Court finds that the City's motion is due to be granted in part and denied in part.

## II.    JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over Advantage's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(b)(1) permits dismissal of an action for lack of subject-matter jurisdiction, in this case due to standing concerns.  A defendant may use Rule 12(b)(1) to attack subject-matter jurisdiction in two ways: facially and factually.  *See Murphy v. Sec'y, U.S. Dep't of the Army*, 769 F. App'x 779, 781 (11th Cir. 2019) (per curiam) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003)).[1]  "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint."  *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  "When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

allegations as true." *Id.* When analyzing a factual attack, though, the court may consider "matters outside the pleadings, such as testimony and affidavits." *Murphy*, 769 F. App'x at 781 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In such instances, the court is "not constrained to view [the facts] in the light most favorable" to the plaintiff. *Carmichael*, 572 F.3d at 1279; *see also Murphy*, 769 F. App'x at 781.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Id*.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* at 678.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Factual allegations that fail to rise "above the speculative level" are insufficient to meet the plausibility standard.  *Twombly*, 550 U.S. at 555.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## IV.   BACKGROUND

### A. The City's Sign Code

The City of Opelika has implemented an application and permitting process for the erection of most signs within the City.  The sign code substantially governs billboards, off-site commercial signs, and on-site signs.  Billboards—"[a]n advertising sign or other commercial sign which directs attention to a business, commodity, service, entertainment, or attraction sold, offered or existing elsewhere than upon the same lot where such sign is displayed"—are prohibited.  (Doc. 1-1 at 6, 17.)  Off-site commercial signs—"non-accessory billboard[s] or sign[s] which direct[] attention to a business, commodity, service, entertainment, or attraction that is sold, offered or existing elsewhere than upon the same lot where such sign is

displayed"—are also prohibited.[2]  (*Id.* at 8, 17.)  Billboards and other off-site commercial signs erected prior to the date the sign code became effective were grandfathered in.  (*Id.* at 54–55.)  Generally, on-site signs are permitted but subject to size, luminosity and height requirements based on the zoning of the underlying property.

Exempt from all requirements are government and statutory signs.  (*Id.* at 16–17.)  A government sign is defined as a sign "erected by or on the order of a public official or quasi-public entity . . . in the performance of any duty."  (*Id.* at 11–12.) A statutory sign, meanwhile, is defined as a "sign the city is required to erect by any statute of the State of Alabama or the United States for safety, directional, or traffic control purposes."  (*Id.* at 14.)

As a general matter, no sign may be erected in the City without a City-issued permit.  On the permit (or sign) applications themselves, the applicant must provide, among other things, information on sign illumination, size, location, and other signs on the property.  (*Id.* at 46–48.)  Once a sign application has been filed, the City has thirty days to review the application, and if no decision is provided within that timeframe, the application is deemed denied.  (*Id.* at 49.)  After the thirty-day period has passed, if the applicant did not receive a written decision as to the denial of their

---

[2] The code defines an *on-site* sign as "[a] sign that advertises an activity conducted on the lot or parcel of land on which the sign is located."  (Doc. 1-1 at 13.)

application, the applicant has sixty days to request a written reason for why the sign was not approved, to which the City must respond within ten calendar days.  (*Id.*) The applicant then has a fourteen-day window to ask for reconsideration.  (*Id.* at 50.) Aggrieved parties may then seek judicial review.  (*Id.* at 51.)

## B. Advantage's Sign Applications

After reaching agreements with various landowners to erect signs on their properties, Advantage submitted six sign applications on March 15, 2021.  (Doc. 1 at 9.)  According to Advantage, each application was fully complete and included documentation showing landowner permission to build on the site, "the required site plan of the property showing the location" of each proposed sign, and "engineered drawings showing the manner of construction and design of the sign."[3]  (*Id.*)

City Sign Enforcement Officer Matt Mosley denied the applications via email and regular mail on April 14, 2021.  (*Id.* at 10.)  According to Mosley, Advantage's applications were denied because they all were incomplete and because, given the information that was provided, the proposed signs did not meet several code requirements.  (*See* Docs. 1-8 through 1-13.)  For instance, among other reasons, each application was denied because the proposed digital reader board exceeded 50

---

[3] The applications, and information concerning the denials, are attached to the Complaint—1441 Gateway Drive (Docs. 1-2, 1-8), 0 Gateway Drive (Docs. 1-3, 1-9), 3300 Pepperell Parkway (Docs. 1-4, 1-10), 0 Frederick Road (Docs. 1-5, 1-11), 0 Cunningham Drive (Docs. 1-6, 1-12), and 1405 Geneva Street (Docs. 1-7, 1-13).

percent of the principal sign surface area, in violation of the code. (*See, e.g.*, Doc. 1-8 at 5–6.) Some permit applications were also denied because their approval would have resulted in too many signs at the given location. (*See, e.g.*, Doc. 1-13 at 6.) Mosley also indicated that, contrary to the assertion made in three of the applications, none of the signs could evade the sign code by carrying a message from the Alabama Department of Public Health or other state agencies, since nothing was submitted showing that an order by a government official directed the posting of these particular signs. (Doc. 1-10 at 4–5, 14; Doc. 1-11 at 4, 14; Doc. 1-13 at 4–5, 14.) The denial letters also contained the following statement: "Also, as a reminder, the City's sign regulations generally prohibit off-site commercial advertising. To the extent these signs would violate that prohibition, they cannot be allowed." (*See, e.g.*, Doc. 1-9 at 6.)

Advantage contends that the City's stated reasons for the application denials were pretextual because other sign applications have been approved that were incomplete or contained similar information. (Doc. 1 at 10–11.) Advantage also contends that the denials were also based on impermissible content-based reasons. (*Id.* at 8.)

**C. Advantage's Complaint**

Aside from challenging the City's application denials in the Circuit Court of Lee County, Advantage also initiated this action alleging violations of its First

Amendment and Fourteenth Amendment rights based on (1) the prohibition on signs with off-site messages; (2) discretionary aspects of the sign code allowing the City to approve certain incomplete applications but denying others; (3) the lack of time limits and other safeguards which allowed City officials to wait thirty days to rule upon Advantage's applications without affording them the ability to supplement their applications; (4) the City's alleged refusal to honor the exemption for government signs in applications for signs containing content from the Alabama Department of Public Health and other government agencies; (5) the City's alleged refusal to treat all signs with all messages at least as favorably as the most favored content, including the City's own speech; and (6) the City's assertion of pretextual bases for denial of Advantage's signs for reasons that did not hinder the approval of other signs.  (*Id.* at 16–17.)

In support of its pretext argument, Advantage points to the sign application for 1822 Pepperell Parkway, which the City had previously approved.  (Doc. 1 at 13–14.)   Advantage alleges that its sign applications were denied because Advantage's proposed signs were too tall, too big, or had a digital face that would take up more than 50 percent of the sign face.  (*Id.* at 13.)  However, as Advantage alleges, the City approved an application for a sign located at 1822 Pepperell Parkway which was 30 feet tall and 300 square feet with a digital display taking up the entire sign face—much like the proposed signs here.  (*See id.*)  Advantage also

alleges the City permitted the 1822 Pepperell sign to be erected despite there being another freestanding sign on the same property—a rationale for the denial in many of Advantage's applications here.  (*Id.* at 14.)

In Count One, Advantage asserts that the City violated its free speech rights under the First Amendment of the U.S. Constitution and Article I, Section 4 of the Alabama Constitution, facially and as applied, because the sign code is content based and a prior restraint on free speech.  (*Id.* at 19–27.)  In Count Two, Advantage claims that the City violated its equal protection rights under the Fourteenth Amendment by favoring the speech of governments and other favored speakers and organizations.  (*Id.* at 27–28.)  In Count Three, Advantage claims that the sign code was enacted in violation of Alabama Code § 11-52-77.  (*Id.* at 28–29.)  Advantage seeks an order compelling the City to allow the applied-for signs, a damages award, legal fees and expenses, and further relief.  (*Id.* at 29.)

## V.   DISCUSSION

The City moves to dismiss this action under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court will address these arguments in turn.[4]

---

[4] The City also argues that the Complaint should be dismissed as an improper shotgun pleading. The Court concludes that there is sufficient detail in the Complaint to ascertain the basis upon which Advantage claims it was injured and by which it seeks relief from the City.  Accordingly, the City's motion to dismiss on the grounds that Advantage filed an improper shotgun pleading is due to be denied.

**A. Standing**

The City first argues under Rule 12(b)(1) that Advantage lacks standing to challenge the sign code.  It asserts that because each application was denied for reasons *other than* the City's ban on off-site advertising and since those other reasons are not being challenged here, the Court cannot redress any alleged constitutional injury; that is, the applications would have been denied anyway.  The City misconstrues the theory and extent of Advantage's Complaint.

Article III of the Constitution limits federal courts to "adjudicating actual 'cases' and 'controversies.'"  *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  To satisfy Article III's well-established "case or controversy" requirement, a plaintiff must demonstrate that it has "standing" to sue by showing that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1300 (11th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  Article III standing is a threshold inquiry.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1988).  "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam) (citation omitted).

In First Amendment challenges to municipal speech regulation, "[a] plaintiff who has established constitutional injury under a provision of a statute as applied to [its] set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision." *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006). A plaintiff may even "bring a First Amendment case asserting the rights of third parties if 'a statute is *constitutionally applied to the litigant* but might be *unconstitutionally applied to third parties* not before the court.'" *Id.* at 1270–71 (citation omitted). A plaintiff, however, may not bring a facial challenge against any provisions of law that do not affect its activities. *Id.* at 1273.

"Where a plaintiff alleges that a statute grants unbridled discretion, a plaintiff need only be 'subject to' the provision to establish a constitutional injury." *Id.* at 1275 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755–56 (1988)). But for purposes of establishing standing, "[i]n a challenge of a prior restraint on speech the plaintiff must establish that the challenged provision pertains to its activity, and not merely that it is 'subject to the law.'" *Id.* at 1276 (quoting *Lakewood,* 486 U.S. at 755–56). Furthermore, in sign regulation cases, even if there is a plausible constitutional injury due to the denial of a sign application, "a plaintiff

whose sign permit applications were denied on the basis of one provision in a
[government's] sign ordinance, but which could have been denied on the basis of
some alternate, but *unchallenged* regulation, does not have a redressable injury."
*Maverick Media Grp., Inc. v. Hillsborough Cnty.*, 528 F.3d 817, 820 (11th Cir. 2008)
(emphasis added).

The City's arguments against standing mostly suffer from one of two
overarching flaws: they either overlook core elements of the Complaint clarifying
that each basis for denial of Advantage's sign applications is being challenged, or
they improperly try to argue that the Complaint fails to state a claim under the guise
of raising a factual standing challenge.  Perhaps most notably, the City takes far too
broad a reading of the rule that a sign applicant does not have standing to challenge
an application denial when the application was denied for an *unchallenged*
regulation.  *See Maverick Media Grp.*, 528 F.3d at 820.  That is because Advantage
challenges all of the bases for the City's application denials.  And second, the City
attempts to use outside evidence, gathered for Rule 12(b)(1) purposes, to challenge
the substantive factual merits of Advantage's complaint allegations.  This the City
cannot do at this early stage in the case under the current pending motions.  *See id.*;
*Murphy*, 769 F. App'x at 781.

Throughout the Complaint, Advantage asserts that each basis cited by the City
to deny its applications was pretextual and that the City has engaged in a pattern of

selective enforcement of its code.[5]  For example, Advantage points to an application for a sign located at 1822 Pepperell Parkway filed by a different applicant in which the City permitted the same general size and type sign as those sought by Advantage. Citing jurisdictional discovery, the City responds that the Pepperell sign is indeed nonconforming, but that it was a grandfathered sign.  This ultimately may be factually true, but it does not sufficiently counter the pleadings and incorporated exhibits that plausibly show an inconsistent application of the sign code for the size and type of signs at issue here.  In any event, the City cannot use jurisdictional discovery, obtained for Rule 12(b)(1) purposes, to try and show that a *challenged* factual element of the City's sign code precludes relief on the substantive merits. The City's arguments are better suited for consideration at a later stage.[6]

In another example of the City's use of jurisdictional discovery to substantively undermine Advantage's pretext theory on the merits, the City argues that the airport height notification zone is a content-neutral and alternative reason for the denial of Advantage's applications for the Frederick Road and Cunningham

---

[5] Because Advantage's theory sounds in selective enforcement, the City's citation to similar applicants must be saved for review on the merits.  There is nothing inherently jurisdictional about referencing potentially similarly situated sign applications to articulate one's theory on the merits as to selective enforcement, viewpoint discrimination, and Equal Protection, and thus the Court must rely solely on the content of the pleadings in evaluating these claims at this stage.

[6] The City also improperly relies upon jurisdictional discovery to challenge Advantage's claims on the merits that the denial of its applications on incompleteness grounds was pretextual.  Again, Advantage challenges this element of the sign code.

Drive lots.  Advantage challenges both application denials on pretext grounds.  The Court may find Advantage's claim as to both applications to be factually incorrect once the Court may consider the actual facts, but nevertheless, Advantage directly challenges this rationale for denying the permit applications, and therefore Advantage has standing to proceed on this claim.  *See Maverick Media Grp., Inc.*, 528 F.3d at 820.  And again, the City cannot rely upon the evidence obtained under its Rule 12(b)(1) challenge to base an argument better suited for a factual merits inquiry.  *See Hulsey*, 905 F. Supp. at 1070.

The City also spills a fair amount of ink arguing that Advantage's sign applications were not denied under the off-site commercial or billboard sign bans, arguing that Mosley's reference to the bans in his denial letters was merely an alternative ground for the denials.  But for standing purposes, it is irrelevant whether a ground for denial of an application is alternative if each rationale for denial is being challenged.  *See Maverick Media Grp.*, 528 F.3d at 820.  Such is the case here.

The City also misses the mark on its standing challenge to Advantage's allegations concerning the government and statutory sign exemptions.  The City argues that Advantage was unaffected by these regulations because no governmental entity directed the posting of their signs carrying messages from government agencies.  This argument completely downplays the core nature of Advantage's allegations—that it was harmed because it was not a government speaker itself, and

14

therefore could not bypass the application process for posting signs, particularly signs containing governmental messages, like a government could. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1264 (11th Cir. 2005) (finding an exemption to a city sign code to be content based when it permitted "governmental identification signs and informational signs to be freely posted, but require[ed] an individual or private organization who wishes to post a sign identifying his office or home, for example, to obtain a permit to do so"). Besides, the evidence cited by the City undercuts its own argument that Advantage does not have standing here. Mosley's actions in contacting the Alabama Department of Public Health, the Alabama Department of Transportation, and the Alabama Department of Economic and Community Affairs to determine if they collaborated with Advantage suggests that the same message would have been posted had these state agencies directed the messages themselves. (*See* Doc. 18-1 at 10–11, 13–14, 18–19.) At this early stage, Advantage's argument that this exemption grants the City unfettered discretion, such that Advantage is nevertheless subject to this provision in having to obtain a permit for a sign when other speakers would not necessarily have to apply for a permit for a sign conveying the same speech, is due to proceed. *See CAMP*, 451 F.3d at 1275.

The City does however raise one successful challenge to Advantage's standing to bring this action—Advantage's standing to challenge the City's time limits for deciding sign applications, either as applied or facially. This is because

the City timely issued Advantage's application denials within the thirty-day window. *Cf. Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1118 (11th Cir. 2003) (finding no standing to challenge the time limitations in a sign permitting scheme when the plaintiff was uninjured).  And in addition, Advantage has failed to plead any injury caused by the time constraints associated with the City's application denials.

Advantage argues in its response brief that the ability of the City to flatly deny a sign application simply by letting the thirty-day review period lapse leaves the City's means of addressing sign applications to the unbridled discretion of City officials, and accordingly, Advantage has standing to challenge the supposed lack of time limitations placed on City officials considering sign applications.  (*See* Doc. 25 at 25–26 (citing *CAMP*, 451 F.3d at 1274).)  But Advantage fails to demonstrate why this provision would serve to "deny expressive activity," even assuming that this provision grants "unbridled discretion."  *See CAMP*, 451 F.3d at 1274.  Besides, as the City points out, the Eleventh Circuit greenlighted a similar sign ordinance in *Café Erotica of Florida, Inc. v. St. John's County*, concluding that the automatic denial of a sign application after thirty days is, without more, constitutional because it nevertheless limits the extent to which a local official may delay the permitting process.  *See* 360 F.3d 1274, 1283–84 (finding the relevant sign ordinance unconstitutional for granting unbridled discretion by other means).  Simply put, the

automatic denial of a sign application after thirty days does not itself grant unbridled discretion.

In short, Advantage may only challenge those aspects of the sign code that directly concern its sign applications.  Accordingly, the Court finds that Advantage has standing to challenge the denial of each of its applications and that it has standing to challenge, both facially and as applied, the following aspects of the sign code: the off-site commercial sign and billboard bans; the completeness requirement for Advantage's sign applications; the governmental and statutory sign exemptions; and the allegedly inconsistent and pretextual application of the size, height, and numerosity requirements for Advantage's proposed signs, as well as the application of the airport height notification zone requirements.

## B. First Amendment

As to the surviving claims concerning Advantage's applications for off-site signs and billboards, the City argues under its 12(b)(6) attack that Advantage fails to state a plausible First Amendment claim because the Supreme Court has declared that such prohibitions are not impermissible content-based prohibitions, its sign code does not impermissibly favor certain speakers through its governmental sign exemption, and Advantage has no maintainable claims based on city officials' purported "unfettered discretion."  None of these arguments are persuasive.

The City is correct that the Supreme Court has clarified that off-site sign and billboard prohibitions do not constitute content-based discrimination under the First Amendment.  Recently, in *City of Austin v. Reagan National Advertising of Austin, LLC*, the Supreme Court affirmed that an off-site sign prohibition is not a "content-based" regulation of speech, and therefore is not entitled to strict scrutiny, since it is not a "regulation[ ] that discriminate[s] based on 'the topic discussed or the idea or message expressed.'"  142 S. Ct. 1464, 1473–74 (2022).  Rather, the Supreme Court explained that on-/off-premises distinctions are comparable to ordinary time, place, or manner restrictions, since "[t]he message on the sign matters only to the extent that it informs the sign's relative location," and therefore such regulations are subject to intermediate scrutiny.  *Id.* at 1473, 75.

The City fails to sufficiently show at this stage though that its off-site commercial sign and billboard prohibitions survive intermediate scrutiny.  The City briefly cites *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508–09 (1981), and *Messer v. City of Douglasville*, 975 F.2d 1505, 1509 (11th Cir. 1992), to argue that such bans naturally pass intermediate scrutiny under the *Central Hudson*[7] test for evaluating the constitutional legitimacy of regulating commercial speech.  But the City makes no real effort to argue why its code is similar to those upheld in *Metromedia* or *Messer* under the *Central Hudson* standard, or even why this finding

---

[7] *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N. Y.*, 447 U.S. 557 (1980).

should be reached in such a conclusory manner on the pleadings alone. Besides, a core aspect of Advantage's claim is that the billboard ban is being applied in a deliberately inconsistent manner, and the City's argument makes no attempt to address that issue. The City's position may well succeed at summary judgment, but at this early stage, based on the Complaint's allegations, Advantage has alleged sufficient facts plausibly showing that the billboard and off-site commercial sign ban is being selectively enforced, triggering concerns that the City is granting or denying permits based on the content of Advantage's proposed signs.

The City also argues that Advantage cannot plausibly raise a First Amendment challenge against the City's governmental and statutory sign exemptions because the code simply reflects the City's lack of control over the conduct of other governmental entities under Alabama law, and in any event, governmental speech is not subject to the First Amendment. At this early stage of the proceedings though, the Court is unable to ascertain the exact parameters of the governmental and statutory sign exemptions based on the language of the sign code. All that is stated in the code itself is that signs directed per statute or per a government directive are exempt from the requirements of the ordinance. (Doc. 1-1 at 11–12, 14, 16–17.) This information alone does not inform the Court of the meaning of performance of a duty, the scope of the government or quasi-governmental entities granted this exemption, or how the City makes the determination that a given sign can be erected

under this exemption.  Accordingly, based on the pleadings alone—and particularly Advantage's allegations concerning its proposed advertisements on behalf of state agencies—it is plausible that the City is impermissibly favoring governmental speakers over non-governmental speakers.

The City's arguments asserting that the First Amendment does not cover governmental speech are inapposite here.  The City argues that the Eleventh Circuit recently clarified that government speech is not governed by the First Amendment.  But the case the City relies upon, *Leake v. Drinkard*, concerned a government prohibition on a message made as part of a government-sponsored public event.  14 F.4th 1242, 1247–48 (11th Cir. 2021).  Here, there are allegations that only the government may make statements without prior approval while Advantage cannot.  And the Eleventh Circuit has already established that this type of conduct by a municipality is subject to strict scrutiny.  *See Solantic*, 410 F.3d at 1264.  Since the City makes no attempt to show that this regulation complies with strict scrutiny, the argument that the City impermissibly favors government speech is reserved for a later date.

And finally, the City's broader arguments concerning allegations of "unfettered discretion" also must fail.  Since the Court is currently evaluating this case based on the Complaint itself, the Court finds that the allegations in the Complaint plausibly suggest that the City is impermissibly treating different sign

applications under differing standards.  That is, rather than denying or granting each application based on its content-neutral regulations, the City is inconsistently applying its own regulations.  And just because the sign code spells out specific guidelines for how the City is to evaluate a sign application does not mean that the City is adhering to these guidelines in practice.  Advantage's First Amendment allegations may not survive summary judgment, but at this stage, this claim will proceed.

### C. Equal Protection

The City next argues in its 12(b)(6) motion that Advantage's Equal Protection challenges fail because Advantage does not identify any so-called favored speakers and because the government cannot be used as a comparator in an Equal Protection action.

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1233 (11th Cir. 2022) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The Equal Protection Clause prevents the government from "treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  "When legislation classifies persons in such a way that they receive different treatment under the law,

the degree of scrutiny the court applies depends upon the basis for the classification." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002).

The City focuses much of its attention on Advantage's allegations pointing  to government speakers as comparators.  It first asserts that it is unable to control how other sovereign governments operate to erect signs under Alabama law, and this is the rationale for the government and statutory sign exemption.  This may be so.  But at this stage, based on the pleadings and the text of the ordinance, the Court is unable to determine the true scope of the government and statutory sign exemptions.

The City also argues that government speech is not subject to regulation under the Equal Protection Clause.  The cited cases though concern lawsuits challenging the content of government speech, not instances where the government has favored government speech over non-government speech when the message is identical.  *See Gundy v. City of Jacksonville*, 50 F.4th 60, 75 n.6 (11th Cir. 2022); *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019); *Bloomberg v. Blocker*, 586 F. Supp. 3d 1251, 1258 (M.D. Fla. 2022).  Again, the City overlooks that Advantage's claim is not an attack on the content of government speech per se, but rather an objection to government speakers being favored over non-government speakers wishing to advance the same message.

The City proceeds to argue that even if Advantage could bring an Equal Protection challenge in the realm of government speech, it could not consider the

government to be similarly situated, thus precluding a class-of-one Equal Protection challenge.  Once again, the Court is not yet able to ascertain the full scope of the governmental and statutory sign exemptions, and thus finds resolution of this issue to be premature.  For a similar reason, the Court finds that it is too early in the proceedings to address the City's arguments asserting a rational basis for discriminatory treatment.  *See SmileDirectClub, LLC v. Lacefield*, No. 1:18-CV-02328-SDG, 2023 WL 2763662, at *7–8 (N.D. Ga. Mar. 31, 2023) (observing that "while the black-letter rational basis standard appears clear enough, it imposes an exceptionally weighty burden on plaintiffs that seems as stringent as the *Twombly*/*Iqbal* pleading standard is lenient," and concluding that this burden should not be used to grant a motion to dismiss when an equal protection claim is not "implausibly pled and incapable of proof").

The City also overlooks the allegations in the Complaint that also compare Advantage's sign applications to the admittedly noncompliant 1822 Pepperell Parkway billboard, which the Court construes as Advantage's main comparator for equal protection purposes.  The closest the City comes to challenging this comparison is arguing that Advantage does not plead a lack of rational basis for the distinction in treatment.  But treating the complaint allegations as true, Advantage plausibly pleads a scenario where the Pepperell sign was arbitrarily allowed to evade certain code regulations while Advantage's was not.  At this early stage in the

proceedings, this is sufficient for Advantage's remaining Equal Protection claim to proceed.

### D. Alabama Law Claims

Lastly, the City challenges Advantage's state law claims.  It argues that Advantage cannot articulate a similar free speech claim under Alabama law as it can under federal law.  It also asserts that Advantage fails to sufficiently challenge the City's sign code under Alabama Code § 11-52-77.

The Court agrees that Count Three of the Complaint fails to plausibly state a claim under Alabama Code § 11-52-77 which sets out the procedures by which municipalities can pass municipal ordinances.  Without reference anywhere in the Complaint as to how exactly the City's sign code violates this statute, the Court cannot ascertain any plausible basis for this claim.  In fact, all the Court can make out in this Complaint as to this issue is the one line in which Advantage states, "When adopting the Sign Regulations, the City failed to comply with these procedures."  (Doc. 1 at 29.)  Advantage has not plausibly plead its state law statutory claim, and therefore that claim is due to be dismissed.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

The Court finds, however, that the City has failed to show its entitlement to dismissal of the state law free speech claim.  Simply put, the City does little more

than point out that Alabama law slightly differs from federal First Amendment jurisprudence.  But the City's motion makes no effort to articulate how the two bodies of law differ or why this difference is applicable here.  And it remains the City's burden to raise and show its entitlement to relief on a motion to dismiss, and not this Court's obligation to do the City's work for it.  Accordingly, Advantage's free speech challenge under Alabama state law is due to proceed.

## VI.    CONCLUSION

Accordingly, it is ORDERED that the City of Opelika's Motion to Dismiss (Doc. 16) is GRANTED in part and DENIED in part as follows:

(1)  To the extent the City seeks to dismiss Advantage's challenges to the City's time restrictions under Counts One and Two, the Motion to Dismiss is GRANTED and these claims are DISMISSED without prejudice;

(2)  To the extent the City seeks to dismiss Count Three, the Motion to Dismiss is GRANTED and the claim is dismissed without prejudice;

(3)  With respect to the remaining claims set forth in the Complaint, the Motion to Dismiss is DENIED.  Counts One and Two of the Complaint shall proceed based on the First Amendment, Equal Protection Clause, and state law facial and as-applied challenges to the following aspects of the sign code: the billboard and off-site sign ban, the allegedly

inconsistent application of the City's application completeness requirement, the governmental and statutory sign exemptions, and the allegedly inconsistent and pretextual application of the City's sign size, height, and numerosity requirements, as well as the airport height notification zone requirements.

DONE, on this the 7th day of August 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE